UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

SOLIDSTRIP INC.,                           )        CASE NO.  5:21-cv-0731
                                           )
                                           )
                Plaintiff,                 )        JUDGE BRIDGET MEEHAN BRENNAN
                                           )
        v.                                 )
                                           )        **MEMORANDUM OPINION**
U.S. TECHNOLOGY                            )        **AND ORDER**
CORPORATION, *et al.,*                     )
                                           )
                Defendants.                )


        Before this Court are the motion for summary judgment (Doc. No. 166) and the

supplemental motion for summary judgment (Doc. No. 179) filed by Defendants U.S.

Technology Corporation ("U.S. Tech"), Raymond F. Williams, U.S. Technology Media

Corporation ("U.S. Media"), and Anthony Giancola (collectively "Defendants").[1]  Plaintiff

Solidstrip, Inc. ("Solidstrip") opposed both motions, and Defendants filed a reply in support of

their summary judgment motion (Doc. No. 172).  For the following reasons, the motions are

GRANTED in part and DENIED in part.

I.  **Background**

        A.  **Alleged Factual Background**

        Because Defendants primarily move for summary judgment on statute of limitations

grounds, neither party thoroughly recited the facts with supporting record citations.  To

_____

[1] *Pro se* Defendant Mark Cundiff neither filed a motion for summary judgment nor joined
Defendants' motions.  Defendants Missouri Green Materials ("Missouri Green"), Daryl Duncan,
and Penny Duncan have been served but have neither answered nor appeared in this action.  The
Clerk of Court has entered their default.  (Doc. No. 183.)

contextualize the Court's resolution of the narrow factual and legal disputes presented in the parties' briefs, Solidstrip's complaint allegations are summarized below.  Some of these allegations are also directly relevant to the Court's resolution of the statute of limitations challenge.

### 1.  The Fraudulent Scheme

Solidstrip is a Wisconsin corporation with its principal place of business in Minocqua, Wisconsin.  (Doc. No. 1 at 2, ¶ 7.)[2]  Solidstrip manufactures and sells materials that remove paint from an object's surface.  (*Id*. at 4, 6, ¶¶ 18-19, 45.)  This dispute concerns Soldistrip's production of Type VIII plastic media ("Type VIII").  (*Id*. at 4, ¶ 22.)  When seeking to remove paint from aircraft, U.S. Armed Forces branches often mandate the use of Type VIII.  (*Id*. at 4, ¶ 24.)  From 2011 to March 31, 2015, the only other company capable of producing Type VIII was Defendant U.S. Tech.  (*Id*. at 4, 10, ¶¶ 25, 76.)  Solidstrip and U.S. Tech were authorized to supply Type VIII to the government.  (*Id*. at 4, ¶ 25.)

U.S. Tech is an Ohio corporation with its principal place of business in Canton, Ohio.  (*Id*. at 2, ¶ 8.)  Defendant Williams owned and operated U.S. Tech.  (*Id*. at 8, ¶ 59.)  To ensure U.S. Tech's bids were accepted over Solidstrip's bids, Williams bribed Defendant Cundiff.  (*Id*. at 16, ¶ 124.)  Cundiff was a Department of Defense employee who oversaw the bidding process when any U.S. Military branch sought aircraft paint removal.  (*Id*. at 9, ¶ 69.)  Cundiff also influenced NATO's procurement of aircraft paint removal products.  (*Id*. at 16, ¶ 123.)

Cundiff ensured Solidstrip would submit unsuccessful bids by knowingly placing requirements in the bid requests that only U.S. Tech could fulfill.  (*See id*. at 13, ¶¶ 94-98.)  First,

---

[2] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

Cundiff demanded that only Solidstrip's patented products be used.  (*Id.* at 13, ¶ 95.)  Second, Cundiff mandated that the bidding party have a facility near Robins Air Force Base in Georgia. (*Id.* at 13-14, ¶¶ 96, 110.)  Third, Cundiff placed recycling requirements in the bid requests.  (*Id.* at 13, ¶ 97.)  But the recycling requirements were impossible to legitimately fulfill given the nature of Type VIII.  (*See id.* at 4-5, ¶¶ 30-44.)  To overcome this hurdle, U.S. Tech enlisted Defendants Missouri Green, Daryl Duncan, and Penny Duncan to store waste in a Missouri facility to make it appear that materials were recycled.  (*Id.* at 16-15, ¶¶ 127-31.)

### 2.  Criminal Convictions

In 2012, federal law enforcement officials began investigating the conduct described above.  (*Id.* at 1, ¶ 1.)  These investigations led to three separate federal criminal cases.  (*See id.* at 12-18.)

On April 14, 2017, an information was filed in the Middle District of Georgia against Cundiff, charging him with conspiring to bribe a public official (Count One) and filing a false tax return (Count Two).  (*United States of America v. Cundiff*, Case No. 5:17-cr-00016, Doc. No. 1 (M.D. Ga.).)  Cundiff pleaded guilty to both counts and was sentenced to a 36-month term of imprisonment, $384,058 in restitution, and 2-years of supervised release.  (*Id.* at Doc. No. 19.)

On April 26, 2017, U.S. Tech, Missouri Green, Williams, Daryl Duncan, and Penny Duncan were indicted in the Eastern District of Missouri.  (*United States of America v. U.S. Technology Corporation et. al.*, Case No. 4:17-cr-00189, Doc. No. 1 (E.D. Mo.).)  They all pleaded guilty to a charged offense.  (*Id.* at Doc. Nos. 145, 148, 154, 157.)  Missouri Green was sentenced to two years of probation and a $1.5 million restitution order.  (*Id.* at Doc. No. 237.) Daryl Duncan, Penny Duncan, Williams, and U.S. Tech were all sentenced to a five-year term of probation and ordered to pay, joint and severally, $1.5 million in restitution.  (*Id.* at Doc. Nos.

185, 199, 227, 229.)

On June 14, 2017, Williams and U.S. Tech were indicted in the Middle District of Georgia with conspiracy to bribe a public official (Count One), 83 counts of bribing a public official (Counts Two through Eighty-Four), and conspiracy to launder proceeds of unlawful activity (Count Eighty-Five). (*United States of America v. Williams et. al.*, Case No. 5:17-cr-00029, Doc. No. 1 (M.D. Ga.).) Williams pleaded guilty to conspiring to bribe a public official. (*Id.* at Doc. No. 62.) U.S. Tech pleaded guilty to conspiring to launder proceeds of unlawful activity. (*Id.* at Doc. No. 64.) The Judge sentenced Williams to a 60-month imprisonment term, a $250,000 fine, $870,000 in restitution, and a 3-year term of supervised release. (*Id.* at Doc. No. 95.) U.S. Tech was sentenced to five years of probation and ordered to pay a $1.5 million fine and $870,000 in restitution. (*Id.* at Doc. No. 97.)

### 3. Alleged Ongoing Fraudulent Conduct

On March 31, 2015, Williams sold U.S. Tech's assets to Defendant U.S. Media, including its Type VIII products and rights to existing government contracts. (Doc. No. 1 at 10, ¶¶ 76-77.) The sale was for $20 million, paid exclusively in monthly installments based on 30% of U.S. Media's gross sales. (*Id.* at 10, ¶ 78.) Immediately after the sale, U.S. Tech fired all its employees. (*Id.* at 10-11, ¶ 79.) The next day, U.S. Media hired all the same employees. (*Id.*) U.S. Media conducts business at U.S. Tech's former buildings and offices. (*Id.*) U.S. Media continues to reap the benefits of U.S. Tech's fraud, including being awarded with government contracts mandating the use of U.S. Tech's Type VIII. (*Id.* at 20, ¶ 142.) Defendant Giancola is U.S. Media's Chief Executive Officer. (Doc. No. 32 at 308.)

### 4. Solidstrip's Alleged Harm

Solidstrip's complaint identifies numerous government contracts that it could not obtain

4

due to Defendants' fraud.  (Doc. No. 1 at 18-23.)  First, Solidstrip states that approximately $3.4 million in government contracts were illegally obtained by U.S. Tech.  (*Id.* at 18-19, ¶¶ 139-40.) These contacts were awarded between May 16, 2011, and February 17, 2016.  (*Id.* at 18-19, ¶ 140.)  Second, Solidstrip provides the names of approximately $4.9 million in government contracts, which U.S. Media fraudulently obtained.  (*Id.* at 20-22, ¶¶ 142-43.)  These contracts were awarded between September 23, 2015, and October 8, 2019.  (*Id.* at 21-22, ¶ 143.)  Third, Solidstrip claims it is entitled to additional damages because U.S. Media has been able to renew U.S. Tech's fraudulently obtained contracts, and there are ill-gotten NATO contracts that will be revealed during discovery.  (*Id.* at 22-23, ¶¶ 146-47, 150-51.)

### B. Procedural Background

On September 8, 2020, Solidstrip initiated this action in the Western District of Wisconsin.  (Doc. No. 1.)  The complaint alleges the following claims against all Defendants:

- Count One: Intentional Interference with Prospective Contractual Relationships;

- Count Two: Injury to Business in Violation of Wisconsin Statute § 134.01;

- Count Three: Common Law Conspiracy;

- Count Four: Acquisition and Maintenance of an Interest in and Control of an Enterprise Engaged in a Pattern of Racketeering Activity Pursuant to 18 U.S.C. §§ 1961(4), (5), (9) and 1962(b);

- Count Five: Conduct and Participation in a RICO Enterprise Through a Pattern of Racketeering Activity Pursuant to 18 U.S.C. §§ 1961(5) and 1962(c);

- Count Six: Pattern of Racketeering Activity Pursuant to 18 U.S.C. §§ 1961(5) and 1962(d);

- Count Seven: Commercial Bribery Claim pursuant to 15 U.S.C. § 13(c);

- Count Eight: Violation of Wisconsin Stat. § 133.03.

(*Id.* at 23-28.)  On April 2, 2021, after finding that it was an improper venue under 28 U.S.C. § 1391, the Wisconsin district court transferred this case to this district pursuant to 28 U.S.C. § 1406(a).  (Doc. No. 54 at 652.)  This case was reassigned to the undersigned on February 23, 2022.  (2/23/2022 Non-Doc. Order.)

On January 25, 2023, the Court granted Defendants' motion for leave to move for summary judgment before the close of expert discovery.  (1/25/2023 Non-Doc. Order.) Defendants moved for summary judgment on June 15, 2023.  (Doc. No. 166.)  The motion moves to dismiss all Solidstrip's Wisconsin law claims because Wisconsin law does not govern this dispute and the rest of its claims because they were untimely filed.  (*Id.* at 1250.)  On August 22, 2023, the Court granted Defendants' motion to compel the deposition of William Stromdahl, Solidstrip's president.  (8/22/2023 Non-Doc. Order; Doc. No. 173; Doc. No. 169-1 at 1489.)  In light of Stromdahl's deposition, Defendants filed a supplemental motion for summary judgment on October 10, 2023.  (Doc. No. 179.)

## II.  Discussion

### A.  Standard of Review

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."  Fed. R. Civ. P. 56(a). "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of showing that no genuine issues of material fact exist."  *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (citations and quotations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A "material" fact is one that "might affect the outcome of the suit under the governing

law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849-50 (6th Cir. 2020) (additional citations and quotations omitted).

"Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Queen v. City of Bowling Green*, 956 F.3d 893, 898 (6th Cir. 2020) (quotation and citations omitted).  "[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold*, 369 U.S. 654, 655 (1962); *see also Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005).

A party asserting or disputing a fact must cite evidence in the record or show that the record establishes the absence or the presence of a genuine dispute.  *See* Fed. R. Civ. P. 56(c) and (e).  Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs.  Fed. R. Civ. P. 56(c)(2); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, the Court's role is not to make credibility determinations or "weigh" conflicting evidence. *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014); *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir. 2003).  "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving

7

parties should prevail as a matter of law." *Payne*, 767 F.3d at 530.

### A.  Wisconsin Law Claims

Defendants move to dismiss Counts Two and Eight because "Wisconsin law does not apply." (Doc. No. 166 at 1255.)  Solidstrip has not responded to this argument in either of its opposition briefs. (*See* Doc. Nos. 169, 182.)  It has not acknowledged that its complaint alleges two Wisconsin law claims – let alone established that it would be proper for this Court to apply Wisconsin law here. (*See* Doc. Nos. 169, 182.)

Solidstrip has abandoned Counts Two and Eight.  Sixth Circuit "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases).  Here, Defendants have moved to summarily dismiss Counts Two and Eight, and Solidstrip has failed to offer any response. (Doc. No. 166 at 1255; *see also* Doc. Nos. 169, 182.)  Summary judgment is therefore granted on Counts Two and Eight.[3]

### B.  Statute of Limitations

Defendants move for summary judgment on Solidstrip's federal and Ohio law claims on statute of limitations grounds. (Doc. No. 166 at 1255.)  When a party moves for summary judgment on statute of limitations grounds, the Court must determine (1) whether there is a

---

[3] Additionally, this case was transferred under 28 U.S.C. § 1406(a) because of improper venue. (Doc. No. 54 at 652.)  "When a case is transferred on that basis, the choice-of-law rules of the transfer*ee* court apply." *GBJ Corp. v. E. Ohio Paving Co.*, 139 F.3d 1080, 1084 (6th Cir. 1998) (emphasis in original).  Thus, Ohio's choice-of-law rules apply. *Id.* at 1085.  Solidstrip appeared to acknowledge that Ohio's choice-of-law rules mandate that Ohio, not Wisconsin, law governs this dispute when it moved for an attachment order under Ohio law. (Doc. No. 73 at 65.)  As such, summary judgment is granted on Counts Two and Eight because Defendants have correctly identified that Wisconsin law does not apply. (*Compare* Doc. No. 166 at 1255 *with* Doc. No. 73 at 65.)

genuine issue of material fact as to when the plaintiff's cause of action accrued, and if not, (2) whether that statute of limitations has run in light of the accrual date.  *StarLink Logistics Inc. v. ACC, LLC*, 653 F. Supp. 3d 462, 497 (M.D. Tenn. 2023) (discussing the standard outlined in *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001)).

"[T]he party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run."  *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). When the moving party bears the burden of proof at trial, its "initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) (citations and quotations omitted).

### C. Analysis

Unfortunately, neither side correctly identified nor applied the appropriate statute of limitations or accrual rules for any claim.  Additionally, the parties only made general arguments, declining to consider whether different rules govern the different claims.  The Court begins its analysis by stating the governing statute of limitations and claim accrual rules for each type of claim.  Next, the Court examines the parties' arguments and evidence.  Finally, the Court considers how these arguments and evidence apply to the unique timeliness issues for each claim.

### 1. Governing Law

#### a. RICO Claims

Solidstrip's civil RICO claims (Counts Four, Five, and Six) are governed by 15 U.S.C. § 15b's four-year statute of limitations.  *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483

U.S. 143, 156 (1987).  These claims began to accrue when the plaintiff "knew or should have known" of his injury.  *Baltrusaitis v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 86 F.4th 1168, 1177 (6th Cir. 2023) (quoting *Rotella v. Wood*, 528 U.S. 549, 553 (2000)).  "The plaintiff need only possess a low level of awareness; he need not fully learn of the alleged wrongdoing.  Knowledge of all facts is not required to set off the prescriptive clock."  *Isaak v. Trumbull Sav. & Loan Co.*, 169 F.3d 390, 399 (6th Cir. 1999) (citations and quotations omitted)).  !In other words, he need only "be aware of storm warnings but does not need to hear thunder and see lightning."  *Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x 433, 436 (6th Cir. 2005) (cleaned up).

The RICO statute of limitations is tolled if the plaintiff properly invokes the fraudulent concealment exception.  *Iron Workers Loc. Union No. 17 Ins. Fund & its Trustees v. Philip Morris Inc.*, 29 F. Supp. 2d 801, 808 (N.D. Ohio 1998).  "With respect to . . . RICO actions, courts in the Sixth Circuit require a plaintiff to show the following elements to invoke the fraudulent concealment exception: (1) defendants' wrongful concealment of their actions; (2) failure of the plaintiff to discover operative facts that are the basis of his cause of action; and (3) the plaintiff exercised due diligence in seeking out facts supporting a cause of action."  *Id.*  In *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997), the Supreme Court explicitly recognized the necessity of a RICO plaintiff's exercise of due diligence in investigating his cause of action to obtain fraudulent concealment tolling.  *Id.* at 196.

Finally, the Court must also consider the separate-accrual rule.  In RICO cases, "the commission of a separable, new predicate act within the 4-year limitations period permits a plaintiff to recover for the additional damages caused by the act."  *Id.* at 190.  The plaintiff, however, "cannot use an independent, new predicate act as a bootstrap to recover for injuries

caused by the other earlier predicate acts that took place outside the limitations period." *Id.* "Instead, the new act must have caused harm over and above the harm that the earlier acts caused." *Baltrusaitis*, 86 F.4th at 1178 (cleaned up).[4]

### b. Robinson-Patman Act Claim

Like a civil RICO claim, a commercial bribery claim (Count Seven) brought under 13 U.S.C. § 13(c), the Robinson-Patman Act, is subject to a four-year statute of limitations. *Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 405 (6th Cir. 1999); *see also Corp. Auto Res. Specialists v. Melton Motors, Inc.*, No. 05-70010, 2005 WL 1028225, at *1 (E.D. Mich. Apr. 19, 2005); *J.D. Fields & Co., Inc. v. Nucor-Yamato Steel Co.*, No. 4:12-cv-00754-KGB, 2015 WL 12696209, at *4 (E.D. Ark. Dec. 4, 2015).  But this claim accrues "when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971); *Hamilton Cnty. Bd. of Comm'rs v. Nat'l Football League*, 491 F.3d 310, 315 (6th Cir. 2007).[5]

---

[4] This Court recognizes that neither the Supreme Court nor the Sixth Circuit have stated whether the separate-accrual rule applies to civil RICO claims. *Baltrusaitis*, 86 F.4th at 1178.  Following persuasive district court opinions in this circuit, this Court applies the doctrine to civil RICO claims.  *Goff v. Nationwide Mut. Ins. Co.*, No. 2:18-cv-340, 2019 WL 7604826, at *7 (S.D. Ohio Sept. 30, 2019).  This approach aligns with the general trend of courts analyzing civil RICO claims similarly to civil antitrust claims.  *See Rotella*, 528 U.S. at 557 (noting the "clear legislative record of congressional reliance on the Clayton Act when RICO was under consideration"); *Baltrusaitis*, 86 F.4th at 1178 n.2 (noting that the Sixth Circuit recognizes the separate-accrual rule in the Clayton Act context).

[5] The Robinson-Patman Act is an antitrust statute.  *The Antitrust Laws*, Federal Trade Commission, https://www.ftc.gov/advice-guidance/competition-guidance/guide-antitrust-laws/antitrust-laws  (last visited March 2024) (examining the purpose of each antitrust law, including the Robinson-Patman Act).  The Court is aware of no authority teaching there are different statute of limitations rules governing antitrust claims brought under the Robinson-Patman Act than Clayton and Sherman Act antitrust claims.  Instead, courts appear to agree that, for statute of limitations purposes, caselaw examining the Clayton and Sherman Acts applies to the Robinson-Patman Act.  *See, e.g.*, *Grand Rapids*, 188 F.3d at 405-06 (applying Sherman Act Sixth Circuit caselaw to determine Robinson-Patman Act statute of limitation issue); *J.D. Fields*,

11

A Robinson-Patman plaintiff may also invoke the fraudulent concealment exception and the separate-accrual rule.[6]  *See Klehr*, 521 U.S. at 189-90, 194-95 (examining separate-accrual rule and fraudulent concealment antitrust caselaw before ruling on these doctrines in the RICO context).

### c.  Ohio Law Claims

Count One, Intentional Interference with Prospective Contractual Relationships, is subject to a four-year statute of limitations.  *Lasmer Indus., Inc. v. AM Gen., LLC*, 741 F. Supp. 2d 829, 836 (S.D. Ohio 2010) (collecting cases).[7]  Because Count Three, an Ohio law conspiracy claim, is not an independent claim, it is governed by statute of limitations rules applicable to its underlying cause of action, that being Count One.  (*See* Doc. No. 1 at 25, ¶ 170 (pleading that

---

2015 WL 12696209, at *4 (applying Sherman Act and Clayton Act Supreme Court caselaw in its Robinson-Patman Act statute of limitations analysis). !!!

!

[6] The Sixth Circuit recently characterized the "continuing violation doctrine" in the antitrust context as the same as the separate-accrual rule examined in *Klehr*.  *Baltrusaitis*, 86 F.4th at 1178 & n.2 (explaining that the Sixth Circuit has never applied the separate-accrual rule in the RICO context but did in *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 467 (6th Cir. 1996), an antitrust case applying the "continuing violation" doctrine).  With this clarification in mind, the Court concludes that *Klehr* applies to Robinson-Patman Act claims.  This means that a plaintiff cannot use a defendant's injurious act that occurred within the limitations period to recover for the defendant's other injurious acts that occurred outside the limitations period – even if those acts are all part of the same pattern of conduct.  *Cf. Goff*, 2019 WL 7604826, at *8-9 (explaining that although it is unclear if the "continuing violation" is different from the "separate-accrual rule," it is clear that the continuing violation doctrine cannot violate the "no bootstrapping rule" stated in *Klehr*).

[7] The appropriate name for Count One is "tortious interference with business relationships," as this tort "includes intentional interference with prospective contractual relations, not yet reduced to a contract."  *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 774 N.E.2d 775, 780-81 (Ohio Ct. App. 2002).  Nonetheless, the Court looks to cases analyzing tortious interference with contract claims because it is essentially the same claim as tortious interference with business relationships, and the Court is aware of no authority providing that different statute limitations rules govern these claims.  *See Lasmer*, 741 F. Supp. 2d at 836, 838 (analyzing statute of limitations issues for tortious interference with contracts and tortious interference with business relationships claims together).

Count Three is premised on the same facts underlying Count One).)  *Thompson v. Citizens Nat'l Bank*, No. 1:14-cv-01197, 2015 WL 5017806, at *4 (N.D. Ohio Aug. 21, 2015) ("[B]ecause a claim for civil conspiracy is not an independent cause of action, the applicable statute of limitations is drawn from the cause of action that underlies it." (citations omitted)).  The statute of limitations for these claims began to run "when the events giving rise to the claim[s] occur[red]."  *Lasmer*, 741 F. Supp. 2d at 836-37; *Mundinger v. Lamson & Sessions Co.*, No. 4:08-cv-1226, 2011 WL 13118867, at *9 (N.D. Ohio Feb. 22, 2011) ("Courts in Ohio have consistently held that tortious interference with contract claims are *not* subject to the 'discovery rule' wherein the statute of limitations begins to run when plaintiff discovers the wrongdoing.'" (emphasis added)).

If a plaintiff wishes to toll the statute of limitations for his tortious interference claim because of fraudulent concealment, he must establish "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts."  *Grover v. BMW of N. Am., LLC*, 434 F. Supp. 3d 617, 632 (N.D. Ohio 2020) (citations and quotations omitted)); *see also Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-cv-00018, 2006 WL 3359448, at *6 (N.D. Ohio Nov. 17, 2006) (stating that Ohio recognizes equitable tolling when the plaintiff establishes fraudulent concealment).

It is unclear whether Ohio recognizes a doctrine like the separate-accrual rule for intentional interference claims.  *Compare e.g.*, *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009) (analyzing Ohio's statute of limitations and applying the continuing violation doctrine because "it is rooted in general principles of common law and is independent of any specific action"); *Ohio Edison Co. v. Wilkes*, 2012-Ohio-2718, 2012 WL 2308127, at *8-9 (Ohio

Ct. App. 2012) (noting "the continuing violation doctrine is not relevant to merely trespass and nuisance causes of action" and applies "[w]here new harm occurs on a continuing basis due to continuing course of conduct") *with e.g.*, *Naiman Fam. Partners, L.P. v. Saylor*, 161 N.E.3d 83, 89 (Ohio Ct. App. 2020) ("The parties identify no Ohio cases applying the continuing tort doctrine to . . . intentional interference with business opportunities [claims]."); *Vitek v. AIG Life Brokerage*, No. 06-cv-615, 2008 WL 4372670, at *10 n.9 (S.D. Ohio Sept. 22, 2008) (noting the plaintiff "produced no legal authority indicating that the [continuing violation doctrine is] applicable to tortious interference claims"); *Corp. Auto Res. Specialists v. Melton Motors, Inc.*, No. 05-70010, 2005 WL 1028225, at *4 (E.D. Mich. Apr. 19, 2005) (stating that the continuing violation doctrine does not apply to Michigan law tortious interference claims).[8] This issue will require additional briefing before this case proceeds to trial.

### 2. The Parties' Arguments and Evidence

#### a. Defendants

In their briefs, Defendants assert that Solidstrip knew about the alleged fraudulent conduct more than four years before it filed the complaint, rendering all claims time barred. Defendants direct this Court to record evidence for support.

First, Defendants direct the Court to the presentence report submitted in Williams' and

---

[8] In *Kienow v. Cincinnati Children's Hosp. Med. Ctr.*, 2015-Ohio-4396, 2015 WL 6438985 (Ohio Ct. App. 2015), the court essentially applied the *Klehr* separate-accrual rule without explicitly stating that it was applying any claims accrual doctrine at all. In that case, the plaintiff sued her former employer and a former supervisor for tortious interference because the supervisor made false and misleading statements about her, hindering her ability to get hired. *Id.* at *1. Some of those statements were in writing and left in a personnel file over time. *Id.* Notably, the supervisor's same pattern of tortious conduct caused the plaintiff to lose all job opportunities described in the complaint. *See id.* at *1, *3. The court held that the "part of the claim" alleging false statements and lost jobs within the limitations period was viable, while "the other part of the claim" that occurred earlier was untimely. *Id.* at *3

U.S. Tech's Georgia criminal case on August 29, 2018. (Doc. 166 at 1251.) This report states the investigation that led to the charged offenses began after the Department of Defense received "an anonymous tip on their 'hotline' in 2012." (Doc. No. 166-1 at 1261.)

Second, Defendants assert that a letter written by Assistant U.S. Attorney Charles E. Peeler, filed in conjunction with Williams' sentencing in the Georgia criminal case, establishes that Solidstrip was the entity that made the "anonymous tip" referenced in the presentence report. (Doc. No. 166 at 1251.) In his letter, Peeler affirmatively states that the investigation into Williams and U.S. Tech "began as the result of a hotline complaint made by Solid Strip." (Doc. No. 166-2 at 1262 (space between Solid and Strip in the letter).)

Third, Defendants cite the testimony of Williams's ex-wife, Asunta Marzano. (Doc. No. 166 at 1251-53.) During the grand jury proceedings in Williams' Georgia criminal case, Marzano testified that, before April 2013, she contacted Bill Stromdahl, Solidstrip's president. (Doc. No. 166-3 1283-84.) After Stromdahl asked her how her husband gave her all these contracts, she informed him that

> I think it was probably because of Mark Cundiff. Somehow they were able to word the contracts in a way that no one could bid on the except [Williams].

(*Id.*) Marzano also testified at an October 2022 post-divorce decree action that, prior to 2013, she told Stromdahl that she knew "Cundiff and [Williams] would get together and write the contracts in such a way that nobody could bid on them." (Doc. No. 166-4 at 1374.)

Fourth, Defendants direct this Court to Stromdahl's affidavit. (Doc. No. 172 at 1506.) Stromdahl stated that the owner of Solidstrip Europe, Paul Mullins, gave an anonymous tip to the Department of Defense hotline. (Doc. No. 169-1 at 1490.) He knew that Mullins gave this tip because Mullins "was frustrated that Solidstrip Europe was unable to get contracts from NATO[,] and he was upset not being provided the details of the underlying PMP contracts."

(*Id.*)  Stromdahl also remembered conversing with Marzano.  (*Id.*)  He recalls Marzano informing him about Williams' "contact" with Cundiff.  (*Id.*)

Fifth, Defendants point to Stromdahl's deposition testimony.  (Doc. No. 179 at 1772-73.)  Stromdahl confirmed that he talked to Marzano two times in either 2011 or 2012.  (Doc. No. 178-1 at 1702.)  He said Marzano initiated these conversations, as she wanted to hear from U.S. Tech's competitor about the contracts Williams had obtained because she was worried that Williams was lying about his net worth.  (*Id.* at 1704.)  During these conversations, Stromdahl testified that Marzano told her that Williams and Cundiff were friends and "worked on contracts together."  (*Id.* at 1705-06.)  She also "maybe" told him that they went on vacations together.  (*Id.*)  Regarding the Department of Defense hotline tip, Stromdahl testified that he informed Mullins that calling the hotline could address his concerns about being unable to procure NATO contracts.  (*Id.* at 1710-11.)  Stromdahl also thinks that Mullins followed up with him after providing the Department of Defense tip.  (*Id.* at 1713.)

Against this evidentiary backdrop, Defendants say the latest Solidstrip was aware of the possibility of the alleged fraud was in 2013 – around the time Williams' divorce was finalized.  (*E.g.*, Doc. No. 166 at 1256.)  This means all claims in Solidstrip's 2020 complaint were time barred by the four-year statute of limitations.  (*Id.*)

### b.  Solidstrip

Solidstrip asserts Defendants' evidence does not establish that its claims accrued in 2013.  (*See* Doc. No. 169 at 1483.)  To do so, Solidstrip maintains that Defendants were required to show that, as a matter of law, in 2013, Solidstrip "should have discovered through the exercise of reasonable diligence that it was injured and that its injury was caused by defendants' illegal conduct."  (*Id.*)

In support, Solidstrip highlights that the documents filed in Williams' Georgia criminal case are inadmissible hearsay. (*Id.* at 1479.) Next, it argues that Marzano's conversations with Stromdahl are insufficient. (*Id.* at 1483-84.) To Solidstrip, a jury could reasonably find that Stromdahl acted reasonably by not placing much weight on his conversation with Marzano because Marzano had a motive to tarnish her ex-husband's reputation and clearly lacked knowledge of Williams' business. (*Id.*) Solidstrip also highlights that Stromdahl is adamant in his affidavit that Marzano never informed him about the illegal scheme orchestrated by Williams and Cundiff. (Doc. No. 169-1 at 1490.) Finally, Solidstrip highlights that it is undisputed another entity made the Department of Defense hotline tip. (*See* Doc. No. 182 at 1790.)

Even if Defendants had proven that it should have or did know about the fraudulent conduct alleged in the complaint, Solidstrip maintains Defendants' motion should still be denied for two reasons. First, Williams and Cundiff intentionally concealed their scheme, and the doctrine of fraudulent concealment mandates the tolling of the statute of limitations. (Doc. No. 169 at 1485.) Second, Solidstrip points out that it has alleged Defendants' fraudulent conduct has never subsided, including U.S. Media's ongoing procurement of illegally obtained contracts for all Defendants' benefits. (*Id.* at 1485-86.) And, under the continuing violation doctrine, each time the Defendants commit a new wrongful act, the statute of limitations for all claims restarts. (*See id.*) To Solidstrip, none of its claims are time barred.

### 3. Findings

#### a. RICO Claims

Defendants have established as a matter of law that the statute of limitations on the RICO claims began to run more than four years before Solidstrip filed its complaint on September 8, 2020. (Doc. No. 1.)

Solidstrip's argument that it "could not" have possibly suspected that Defendants' fraudulent conduct was causing injury more than four years before suing fails on two fronts. (Doc. No. 169 at 1483-84; Doc. No. 169-1 at 1490.)  One, it is directly contradicted by Stromdahl's admission that *he* suggested that Mullins provide the Department of Defense tip in 2012.[9]  (Doc. No. 178-1 at 1710-11; Doc. No. 166-1 at 1261.)  Stromdahl's admission that Williams' ex-wife told him that Cundiff and Williams were friends and worked on contracts together also undermines Solidstrip's claim of complete ignorance.  (Doc. No. 178-1 at 1705-06.)  Two, the law does not demand that Solidstrip know all details of Defendants' fraudulent scheme to trigger the statute of limitations.  *See, e.g.*, *Sims*, 151 F. App'x at 436 (statute of limitations begins to run after "the plaintiff has been presented with evidence suggesting the possibility of fraud" (quotations omitted)).  Rather, the statute of limitations runs when the plaintiff has "storm warnings" that they are being injured.  *Id.* (quotations omitted).  As a matter of law, Stromdahl's conversation with Marzano and ultimate recommendation to Mullins to alert federal authorities show that Solidstrip had sufficient warning that Defendants' fraud was *potentially* harming it.  (Doc. No. 178-1 at 1705-06, 1710-11.)

*Isaak* supports this finding.[10]  In this case, the plaintiffs alleged civil RICO claims against the defendants for soliciting investments for a campground with the sole intention of using this money for their personal gain, not the development of the campground.  *Isaak*, 169 F.3d at 393-95.  The court held that the RICO claims were time barred because, for example, one of the

---

[9] It is unnecessary to rely on any of the Georgia criminal case documents because of this admission, rendering Solidstrip's hearsay concerns moot.  (Doc. No. 169 at 1479.)

[10] Although this case was decided before the Supreme Court clarified the civil RICO claim accrual rule in *Rotella*, the Sixth Circuit has applied it after *Rotella*.  *Goff*, 2019 WL 7604826, at *4 n. 7 (examining Sixth Circuit's applications of *Isaak*).  The Court thus still looks to *Isaak* for guidance.  *See id.* (also considering *Isaak*).

named plaintiffs admitted that he suspected the defendants were misusing his investment before federal proceedings fully elucidated the defendants' fraud.  *Id.* at 394-95, 399-400.  Specifically, the plaintiff observed the defendants driving expensive cars and using helicopters while neglecting to fulfill their promise to develop the land.  *Id.* at 400.  Suspecting foul play, the plaintiff removed his trailer from the campsite and stopped making payments on promissory notes.  *Id.* at 399.  The Sixth Circuit held that the plaintiff's admissions and conduct showed, as a matter of law, that he had sufficient notice that he was potentially being injured by the defendants' fraud.  *Id.* at 400.  Similarly, having reviewed Stromdahl's descriptions of his conversations with Mullins and Marzano, the Court finds that Solidstrip cannot claim that it was completely unaware of the fraud perpetrated by U.S. Tech, Williams, and Cundiff more than four years before it filed its complaint.  (Doc. No. 178-1 at 1705-06, 1710-11.)

Stromdahl's knowledge also dooms Solidstrip's fraudulent concealment tolling argument. After it was aware that Defendants' fraudulent conduct was potentially causing it considerable financial damage, Solidstrip had an affirmative duty to conduct due diligence into its RICO claims.  *Klehr*, 521 U.S. at 196.  Solidstrip does not contend that it did anything to investigate its claims after being alerted of the possibility of fraud.  (*See* Doc. No. 169 at 1485.)  Instead, it allowed potential damages to accumulate before filing suit – a tactic explicitly prohibited by *Klehr*.  521 U.S. at 187, 195.  Solidstrip therefore cannot toll the statute of limitations under the fraudulent concealment doctrine.[11]

---

[11] To the extent that Solidstrip contends that it could wait until the criminal investigations and cases concluded to file its civil RICO claims, this argument is not well-taken.  (*See* Doc. No. 169 at 1485 (suggesting that the only way it could have been aware of its RICO claims is by waiting until the "government and law enforcement agencies" concluded their investigations).)  When a plaintiff is aware or has reason to be aware that he has potential RICO claims against a defendant, his obligation to file suit is not tolled when there is an ongoing criminal investigation into the defendant's same conduct.  *See Farmer v. D & O Contractors, Inc.*, 640 F. App'x 302,

In short, the Court finds that there is not a triable issue on whether the statute of limitations began to run on Solidstrip's RICO claims more than four years before Solidstrip filed its complaint on September 8, 2020.

But the separate-accrual rule prohibits the dismissal of the RICO claims in full. Solidstrip alleges Defendants injured Solidstrip after September 8, 2016, because U.S. Media continued to obtain contracts. (Doc. No. 1 at 18-22.) And, as the summary judgment movant, Defendants have not shown these allegations of recent misconduct are baseless by either providing affirmative evidence or asserting an absence of evidence. *See* Fed. R. Civ. P. 56. Thus, under the separate accrual rule, Solidstrip's RICO claims are not entirely time barred. *See Klehr*, 521 U.S. at 190. Absent a successful directed verdict motion, Solidstrip may ask a jury to find that Defendants are liable for all predicate acts that occurred on or after September 8, 2016, that "have caused them harm over and above the harm that the earlier acts caused." *Id.* Solidstrip, however, cannot recover for Defendants' pre-September 8, 2016, fraudulent conduct. *See id*.

Accordingly, Defendants' motions are granted in part and denied in part as they relate to Solidstrip's civil RICO claims.

### a. Robinson-Patman Act Claim

The Court's RICO holding applies with equal force to the Robinson-Patman Act claim. The separate-accrual rule allows Solidstrip to seek redress for all fraudulent acts occurring on or after September 8, 2016. *See Baltrusaitis*, 86 F.4th at 1178 n.2 (separate-accrual rule applies to civil antitrust claims in the Sixth Circuit). But Defendants' motion is granted as it seeks to

---

304-06 (5th Cir. 2016) (no equitable tolling after the plaintiff went to the FBI to investigate alleged fraudulent conduct and waited for FBI investigation to conclude to file his lawsuit).

prohibit Solidstrip from obtaining damages for all other acts occurring before this date.  *See Klehr*, 521 U.S. at 190.

The statute of limitations for this claim began to run even earlier than for the RICO claims.  This claim accrued when Defendants committed a fraudulent act that injured Solidstrip's business – Solidstrip's awareness of the injury or illegal conduct is irrelevant.  *See Zenith*, 401 U.S. at 338; *Klehr*, 521 U.S. at 188 (stating that traditional antitrust claims have a "pure injury accrual" rule).  According to the complaint, Defendants' fraud caused Solidstrip to lose a business opportunity as early as May 16, 2011.  (Doc. No. 1 at 20.)

### a.  State Law Claims

As with the federal claims, Defendants have met their burden of proving that Solidstrip's state law claims began to accrue more than four years before Solidstrip filed its complaint.  This is so because the "events giving rise to the claims" began to occur more than four years before Solidstrip filed the complaint.  *Lasmer*, 741 F. Supp. 2d at 836-37.  And for the reasons described in the Court's analysis of the RICO claims, a jury could not find that Solidstrip exercised due diligence in investigating these claims, which is necessary to take advantage of equitable tolling in Ohio.  *See Grover*, 434 F. Supp. 3d at 632 (stating Ohio's fraudulent concealment doctrine has a due diligence requirement).

The only difference with these claims is the uncertainty surrounding the applicability of a doctrine like the separate-accrual rule.  *See Vitek*, 2008 WL 4372670, at 5, *10 n.9 (expressing skepticism that Ohio recognizes the continuing tort doctrine for tortious interference claims).  As previously stated, the Court will require additional briefing on the availability and contours of such a doctrine if it is to be presented to a jury.

### D.  U.S. Media and Anthony Giancola

Solidstrip argues that U.S. Media did not exist until 2013 and did not purchase U.S. Tech's business until 2015.  (Doc. No. 169 at 1486-87.)  To Solidstrip, U.S. Media and Giancola "cannot rely upon events prior to its existence to bar claims under the statute of limitations." (*Id.*)  No caselaw is cited for this proposition.  (*See id.*)

This argument is not well-taken.  The Court's holding applies to U.S. Media and Giancola because, according to Solidstrip, U.S. Media purchased U.S. Tech and began fraudulently obtaining contracts in 2015, triggering the limitations period for the Robinson-Patman Act and state law claims.  (Doc. No. 1 at 10, 19-20, ¶¶ 76, 140.)  *See Zenith*, 401 U.S. at 338; *Lasmer*, 741 F. Supp. 2d at 836-37.  And Solidstrip cannot argue that the RICO statute of limitations did not also accrue in 2015 because, at this point, Solidstrip heard "storm warnings" when it began losing contracts to U.S. Tech's successor for the same potentially fraudulent reasons it was losing contracts to U.S. Tech.  (*See* Doc. No. 1 at 11, 19-20, ¶¶ 80-82, 140.)  *Sims*, 151 F. App'x at 436.

### III. <u>Conclusion</u>

For the reasons stated herein, Defendants' motions are GRANTED in part and DENIED in part.  Solidstrip's Wisconsin law claims are dismissed, and all other claims remain pending only as they relate for conduct occurring on or after September 8, 2016.

**IT IS SO ORDERED.**

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

**Date**: March 18, 2024